Charles B. and Susan M.
TEMPLE, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 637–85T.

United States Claims Court.

Dec. 3, 1986.

B. Gray Gibbs, St. Petersburg, Fla., for plaintiffs.

Elizabeth D. DePriest, Washington, D.C., with whom were George L. Hastings, Jr., Mildred L. Seidman, and Asst. Atty. Gen. Roger M. Olsen, for defendant.

## ORDER

NETTESHEIM, Judge.

Defendant has moved for partial summary judgment dismissing the complaint as to plaintiffs' claims for refund reflecting their *pro rata* share of losses sustained and an investment credit based on the acquisition and leasing of a refrigerated highway freight trailer. The briefing has been completed, and argument is deemed unnecessary.

## FACTS

Plaintiffs Charles B. and Susan M. Temple ("plaintiffs") were investors in the so-called Nitrol Program offered by two California corporations, Nitrol Corporation and Transit Management Company. The only facts material to the resolution of defendant's motion are the operative facts concerning execution of a Closing Agreement on Final Determination Covering Specific Matters (the "closing agreement") with the Internal Revenue Service (the "IRS") concerning plaintiffs' claims for refund of disallowed deductions for losses and an investment tax credit for 1977 and deductions for losses for 1978, all of which relate to plain-

tiffs' Nitrol Program activities. Plaintiffs take the position that the closing agreement should not bind their claims to final disposition based on test cases.

The complaint in this case, filed on October 28, 1985, alleged in pertinent part:

(a) On or about August 15, 1984, the plaintiffs entered into a Closing Agreement on Final Determination covering specific matters with the Internal Revenue Service relating to plaintiffs' Claims for Refund for the years 1977 and 1978.

(b) Pursuant to the terms of the aforesaid closing agreement, the Plaintiffs and the Defendant agreed that the Plaintiffs' Claims For Refund would be resolved on a basis consistent with the final resolution of similar issues in a test case tried in the United States Tax Court captioned William F. Sutton and Helen C. Sutton, et al. v. Commissioner of Internal Revenue.

(c) The test case of William F. Sutton and Helen C. Sutton, et al. v. Commissioner of Internal Revenue has not yet been finally resolved.

(d) At the time the test case of William F. Sutton and Helen C. Sutton v. Commissioner of Internal Revenue is finally resolved, the Defendant is bound to allow the Plaintiffs their Claim for Refund in a manner consistent with the results in the test case.

Compl. ¶ 12 (underscoring in original). These allegations were made applicable to both tax years. See id. ¶ 22.

The closing agreement dated July 17, 1984, was appended to the complaint and provided in pertinent part:

WHEREAS, the taxpayers invested in a program [hereinafter referred to as the Nitrol Program] offered by two California corporations, Nitrol Corporation and Transit Management Company, and have reported their Nitrol Program activities on Schedules C of their joint federal income tax returns for the taxable years December 31, 1977 and December 31, 1978. [bracketed material and underscoring in original]

WHEREAS, a dispute has arisen between the taxpayers and the Commissioner of Internal Revenue with respect to the taxpayers' claimed losses from their Nitrol Program activities for the taxable years December 31, 1977 & 78, and the investment tax credit claimed by the taxpayers for a trailer and Nitrol Unit for the taxable year December 31, 1977. [underscoring in original]

WHEREAS, the parties desire to provide for the *final and conclusive resolution* of that dispute.

NOW IT IS HEREBY DETERMINED AND AGREED for federal income tax purposes:

1. The adjustments proposed by the Commissioner of Internal Revenue Service are as follows:

December 31, 1977 increase income from Sue Brooke Transport $49,237.00.

December 31, 1978 increase income from Sue Brooke Transport $43,020.00.

Disallow all investment credit in the amount of $9,945.00 deducted in 1977. [hereinafter referred to as the Nitrol adjustments] [bracketed material in original]

2. The same kind of Nitrol adjustments are involved in the following cases before the United States Tax Court, which cases have been consolidated for purposes of trial, briefing and opinion:

William F. Sutton and Helen C. Sutton—Docket No. 22131–81

John F. Knowlton and Betty W. Knowlton—Docket No. 22639–81

Joseph W. Fleece, Jr. and Joanne M. Fleece—Docket No. 28537–81

John C. Pruitt and Frances M. Pruitt—Docket No. 13350–82

R. Houston Babcock and Suzanne Babcock—Docket No. 3114–83.

[hereinafter referred to as the controlling cases]. . . .

3. *The resolution of the issues related to the Nitrol adjustments in the controlling cases shall be controlling with respect to the resolution of the Nitrol adjustments set forth in paragraph 1.*

4. *When the issues related to the Nitrol adjustments in the controlling cases are finally resolved, whether through settlement or litigation, the Nitrol adjustments set forth in paragraph 1 shall be resolved on a basis that is consistent with the basis on which the issues were resolved in the controlling cases.*

5. *As may be necessary, the taxpayers are to be considered as if they were the same as the petitioners in the controlling cases.*

6. The taxpayers will testify or provide information in any case involving the same kind of Nitrol adjustments, if requested to do so.

7. The taxpayers consent to the disclosure of their tax returns and tax return information in connection with the Commissioner's discovery or submission of evidence in any case involving the same kind of Nitrol adjustments.

8. The amount of any federal income tax that becomes *due from the taxpayers under the terms of this agreement may be assessed by the Commissioner of Internal Revenue* on or before the expiration of the one year (365 days) period following the date on which the decisions in the controlling cases become final, notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by I.R.C. § 6501. This assessment shall be made without the issuance of the notice of deficiency authorized by I.R.C. § 6212, and without regard to the restrictions otherwise imposed by I.R.C. § 6213.

(Emphasis added.)

On April 8, 1986, the parties' Joint Preliminary Status Report advised that the Tax Court had issued its decision in *Sutton* on February 13, 1985 (before the complaint was filed in this case), reported as 84 T.C. 210, and that the decision was then on appeal to the United States Court of Appeals for the Eleventh Circuit. The status report further stated in part:

On July 17, 1984, plaintiffs entered into an agreement with the Commissioner of Internal Revenue to resolve the first issue in this case (as indicated in our response to question h, below [whether plaintiffs are entitled to their *pro rata* share of losses in 1977 and 1978 sustained in leasing refrigerated highway freight trailers to shippers of commodities]) in accordance with the outcome of *Sutton, et al. v. Commissioner,* a case then pending in the U.S. Tax Court. This agreement was embodied in a Closing Agreement (Form 906). The Tax Court issued a decision in *Sutton* on February 15, 1985 (84 T.C. 210), which is currently on appeal to the Eleventh Circuit. The appeal has been fully briefed by the parties, and the Eleventh Circuit heard oral argument thereon on March 26, 1986. The parties expect a decision by September 30, 1986.

Joint Preliminary Status Report filed Apr. 8, 1986, at 2.

On April 9, 1986, an order entered, ¶ 1 of which provided, as follows:

At the parties' request, proceedings in this case are suspended pending a decision by the Eleventh Circuit in *Sutton, et al. v. Commissioner* or until September 30, 1986, whichever earlier occurs. It is understood that plaintiffs agree to be bound by the decision of the Eleventh Circuit insofar as it resolves issues h(1) and (2) on page 3 of the Joint Preliminary Status Report.

The Eleventh Circuit affirmed on the basis of the Tax Court's opinion. *Sutton v. Commissioner,* 788 F.2d 695 (11th Cir. 1986) (per curiam). Certiorari was not sought. Plaintiffs thereafter advised that the disposition of *Sutton* was not binding with respect to what had been identified as the first issue in the Joint Preliminary Status Report, and defendant filed its motion for partial summary judgment.

## DISCUSSION

This court may grant summary judgment under RUSCC 56 when the record shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 94 L.Ed.2d 202 (1986); *accord Johnson Controls, Inc. v. United States,* 8 Cl.Ct. 359, 365 (1985) (citing cases), *aff'd per curiam,* 795 F.2d 1011 (Fed.Cir.1986). As the opponent of summary judgment, plaintiff shall " 'receive the benefit of all applicable presumptions, inferences, and intendments.' " *Johnson Controls, Inc.,* 8 Cl.Ct. at 365 (quoting *Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984)). If the record reveals that any of plaintiffs' claims are barred as a matter of law, then they must be dismissed.

In opposition to defendant's motion, plaintiffs offered the affidavit of Charles B. Temple, who averred:

1. It was never my intention to be considered as if I was the same as the Petitioners in the controlling cases for all purposes and circumstances.

2. It was my intention that my factual situation be applied to, and issues resulting therefrom be resolved on, a basis that is consistent with the basis on which the issues were resolved in the controlling cases.

3. It was never my intention to be unequivocally bound by the decisions in the controlling cases when I executed the Closing Agreement concerning Nitrol adjustments on July 17, 1984.

■ The closing agreement is a contract, and its interpretation is a matter of law to be resolved by the court. *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984). An interpretation that gives a reasonable meaning to all parts of a contract will be preferred to one that leaves portions of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed. Cir.1985) (citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed. Cir.1983)). The question for decision on this motion is the construction of the closing agreement in view of the posture of the *Sutton* cases when the agreement was entered into.

The closing agreement was negotiated for plaintiffs by a predecessor attorney; plaintiffs' counsel of record in this court represented petitioners in *Sutton. Sutton* had been tried and briefed and was awaiting decision by the Tax Court when plaintiffs and the IRS executed the closing agreement. There were two issues before the Tax Court in *Sutton:* whether petitioners' Nitrol Program activities were engaged in for profit and whether certain nonrecourse notes could be included in the basis of the trailers acquired by petitioners. 84 T.C. at 212. The second was not decided by the Tax Court. *Id.* at 221. The issue that was decided—whether the taxpayers engaged in an activity with the requisite objective of making a profit—was acknowledged to be a factual inquiry to be resolved on the basis of all the facts and circumstances, with particular emphasis on objective factors. *Id.* at 221–24. In other words, subjective intent did not govern the determination whether the dominant motive was tax profit or economic profit. *See id.* at 223. Plaintiffs presumptively knew that *Sutton* was fact intensive and that the facts guiding the determination in *Sutton* would bind them, because *Sutton* had been tried and briefed before they entered into the closing agreement.

■ Paragraphs 3–5 of the closing agreement provide that whatever issues were decided by the Tax Court in *Sutton* relating to the Nitrol adjustments would control the proposed adjustments in plaintiffs' tax returns for 1977 and 1978; that the proposed adjustments will be resolved on a consistent basis with the resolution of the Nitrol adjustments in the controlling cases; and that the taxpayers, as may be necessary, will be considered as if they were petitioners in the controlling cases. Paragraph 8 allows the Commissioner to make any assessment if an amount becomes due from the taxpayers "under the terms of this agreement." Although the closing agreement is not a paradigm of clarity, it cannot be characterized fairly as ambiguous or inconsistent. Plaintiffs construe the closing agreement to bind the IRS to treat plaintiffs in accord with the

result in *Sutton,* had petitioners prevailed in *Sutton,* and at the same time not to bind plaintiffs to the result in *Sutton* if that decision ultimately were unfavorable, as it was. The gloss that plaintiffs ask the court to put on the closing agreement would render meaningless the language of the preamble to the closing agreement that the parties desired "a final and conclusive resolution of . . . [their] dispute," the language of paragraph 3 that resolution of the issues in *Sutton* on the Nitrol adjustments "shall be controlling" on plaintiffs' same claims, and the language of paragraph 8 allowing future assessments to be based on the terms of the agreement.[1]

■ Plaintiffs say that it would have been much simpler for the IRS to have stated in the closing agreement that plaintiffs agreed to be bound by the results in *Sutton.* Their point is well taken, but the closing agreement provides effectively that *Sutton* will control plaintiffs' case, and this is sufficient. Plaintiffs also urge application of *contra proferentum,* which allows language to be construed against the Government as its drafter providing that the language is ambiguous (but not patently so), *Chris Berg, Inc. v. United States,* 197 Ct.Cl. 503, 514, 455 F.2d 1037, 1044 (1972) (per curiam), and that the private party's interpretation lies within the zone of reasonableness. *WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 6, 323 F.2d 874, 876 (1964). *See generally John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456, *aff'd per curiam,* 785 F.2d 325 (Fed.Cir.1985). Here the language of paragraphs 3–5 of the closing agreement is not ambiguous, and plaintiffs' interpretation is unreasonable.

The reasonable and straightforward interpretation of the closing agreement is to bind plaintiffs to the Eleventh Circuit's affirmance of the decision denying the *Sutton* petitioners their claims. Plaintiff Tem-

ple's affidavit thus fails to raise a genuine issue of material fact, because his averments are material only if an ambiguity is present concerning the intent of plaintiffs in entering into the closing agreement. Allowing plaintiffs to sponsor an intent inconsistent with unambiguous language would be improper. *See* 4 S. Williston, A Treatise on the Law of Contracts § 601, at 308 (3d ed. 1961 & Supp.1986) (where terms of a contract unambiguous, intent of the parties must be found therein); *cf. Southern Constr. Co. v. United States,* 176 Ct.Cl. 1339, 1361, 364 F.2d 439, 453 (1966) (per curiam) (reasonable uncertainty of meaning must be evident in order to render contract ambiguous).[2]

## CONCLUSION

Based on the foregoing, defendant's motion for partial summary judgment is granted. Accordingly,

IT IS ORDERED, as follows:

1. The complaint will be dismissed as to the claims for refunds for the 1977 and 1978 deductions and the 1977 tax credit relating to the Nitrol Program.

2. The parties shall file a supplemental Status Report by January 6, 1987, proposing a course and timetable for further proceedings.

---

1. If plaintiffs contend that the closing agreement obligated the Government to try their cases on the same basis as the *Sutton* cases were tried, this construction is rejected also as rendering meaningless the quoted language of the preamble and paragraphs 3–5 and 8.

2. Defendant's arguments that the parties' conduct is consistent with the construction of the closing agreement adopted by the court are well taken and reinforce the result reached herein.